Certiorari Granted, No. 31,958, October 8, 2009

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-119**

**Filing Date: August 14, 2009**

**Docket No. 28,008**

**LORI KEITH, Personal Representative
of the Estate of Barbara Barber,**

      **Plaintiff-Appellee,**

**v.**

**MANORCARE, INC.,**

      **Defendant-Appellant,**

**and**

**CLYDE SANCHEZ, DOORSTEP
MEDICAL CONSULTANTS, LLC,
KATHY BUSHNELL, GERARD
MURAIDA, and SOUTHWEST
GERIATRIC ASSOCIATES, LLC,**

      **Defendants.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Linda M. Vanzi, District Judge**

Lorenz & Goble P.C.
Alice Tomlinson Lorenz
Robin A. Goble
Albuquerque, NM

Dines & Gross P.C.
Michael Gross
Steven J. Leibel
Albuquerque, NM

1

Shapiro Bettinger Chase LLP
Carl J. Bettinger
Albuquerque, NM

for Appellee

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
R. E. Thompson
Tim L. Fields
Emil J. Kiehne
Albuquerque, NM

Carlton Fields, P.A.
Sylvia H. Walbolt
Matthew J. Conigliaro
Tampa, FL

for Appellant

Lewis and Roca LLP
Thomas P. Gulley
Albuquerque, NM

Reed Smith LLP
Paul D. Fogel
Raymond A. Cardozo
San Francisco, CA

for Amicus Curiae Association of
Commerce & Industry

Doerr & Knudson
Randy J. Knudson
Portales, NM

for Amicus Curiae National Citizens'
Coalition for Nursing Home Reform

## OPINION

**FRY, Chief Judge.**

**{1}** Defendant ManorCare, Inc., appeals from a $53.2 million jury verdict entered against it in a wrongful death action brought by Plaintiff Lori Keith as the personal representative

of the estate of Barbara Barber, the decedent. Ms. Barber was a resident at the ManorCare Camino Vista nursing home and died at the home in December 2004. Plaintiff sued, alleging that Defendant had negligently caused Ms. Barber's death. On appeal, Defendant argues that the district court erred by: (1) entering a finding that Defendant was the employer of the staff of the nursing home where Ms. Barber resided, (2) declining to allow the jury to apportion fault to the physician who treated Ms. Barber, (3) declining to allow separate trials for liability and punitive damages, (4) excluding one of Defendant's expert witnesses, and (5) declining to reduce the $50 million punitive damages award as unconstitutionally excessive. We conclude that the district court erred in determining prior to trial and on the basis of disputed facts that Defendant was the employer of the staff at the facility where Ms. Barber resided and that this error requires a new trial. Because this issue is dispositive, we do not address any of Defendant's remaining arguments.

**BACKGROUND**

**{2}**     Plaintiff brought this action following the death of Barbara Barber, a resident of the ManorCare Camino Vista (Camino Vista) nursing home facility in Albuquerque, New Mexico. On December 20, 2004, Ms. Barber was found unresponsive in her bed by a nurse working at the Camino Vista facility. Ms. Barber was pronounced dead shortly after the staff's discovery of her body. Plaintiff alleged that Ms. Barber died of gastrointestinal bleeding that was negligently left untreated by the nursing staff at the Camino Vista facility. Plaintiff sought compensatory damages for Defendant's alleged negligence as well as punitive damages for Defendant's alleged wanton, willful, and reckless conduct.

**{3}**     In its answer to Plaintiff's complaint, Defendant noted that its subsidiary, Four Seasons Nursing Centers, Inc. (Four Seasons), was the owner and operator of the Camino Vista facility, not Defendant. Specifically, while Defendant admitted that it "owns the stock of a corporation that owns the stock of another corporation that wholly owns the stock of [Four Seasons]" and that Four Seasons was doing business as HCR ManorCare Camino Vista, it denied that it "owned, operated or managed the nursing home." Defendant also denied Plaintiff's allegation that it "was acting through its employees, agents, apparent agents or contractors who were acting within the scope of their employment, agency, apparent agency or contract in the services they provided to [Ms.] Barber while she was a patient at [Camino Vista] nursing home."

**{4}**     The issue of whether Defendant was the employer of the Camino Vista nursing staff does not appear to have come up again in any way until after Defendant filed a motion for summary judgment on Plaintiff's punitive damages claim. In that motion, Defendant noted that Plaintiff had made a direct punitive damages claim against it as well as a vicarious liability claim based upon the actions of the nurses at Camino Vista and argued that there was no evidence that either Defendant or the nurses had any malicious intent. Thus, Defendant argued, Plaintiff could neither establish vicarious liability for punitive damages based on the actions of the nursing staff nor show that Defendant directly engaged in the type of conduct needed to prove a punitive damages claim. In response, Plaintiff argued that a "corporation may be liable for punitive damages for the wrongful acts of employees who are acting within the scope of employment and who are employed in a managerial capacity"

3

when the corporation ratifies an employee's conduct, and, under *Clay v. Ferrellgas, Inc.*, 118 N.M. 266, 270, 881 P.2d 11, 15 (1994), when "the actions of the employees in the aggregate demonstrate a cumulative effect that proves the requisite culpable intent."

{5}     To address these arguments, Defendant argued in its reply that the cumulative conduct of the Camino Vista staff could not be used against it because none of the staff members were its employees. In support of this argument, Defendant submitted a number of documents showing that the employees whose conduct Plaintiff sought to cumulate were actually employees of Heartland Employment Services, Inc. (Heartland), who were working for Four Seasons at the Camino Vista facility, not for Defendant ManorCare, Inc.

{6}     At the hearing on Defendant's motion, Plaintiff argued that Defendant had improperly raised the absence of an employment relationship and asked the court to stop Defendant from raising the issue again. Plaintiff's counsel argued, "I believe they are estopped, both from their conduct up until this point, and from the documents I will now submit," from arguing that Defendant was not the employer of the nursing staff. Plaintiff submitted the following to the court: a ManorCare, Inc., annual report that made references to "the employees of ManorCare" at its 276 nursing homes and indicated that ManorCare, Inc., is also "refer[red] to as ManorCare or HCR ManorCare"; documents from the personnel file of Nola Jamison showing many internal references to the facility as "HCR ManorCare"; a cost report for the Camino Vista facility submitted to a state agency that was signed by Barry Lazarus, who Plaintiff's counsel represented was an executive "for the entire company"; a number of other documents used at the Camino Vista facility that utilized the name "HCR ManorCare" and indicated that the Camino Vista staff members were employees of HCR ManorCare; and excerpts from the depositions of Richard Parades, who Plaintiff's counsel represented was "the mid-stage division head of ManorCare," and Brian Galpin, who Plaintiff's counsel represented was the "nursing home administrator at [Camino Vista]." Plaintiff's counsel explained the significance of the deposition excerpts as demonstrating the chain of command among various executives and administrators.

{7}     In response, Defendant relied on the documents it had submitted with its reply showing that: the employees at the facility, including Jamison and Galpin, were employed by Heartland and that the facility was owned by Four Seasons; Ms. Barber had contracted with Four Seasons, not with Defendant, for her care at the facility; and Four Seasons was a subsidiary of one of Defendant's subsidiaries.

{8}     The court then advised the parties that it would not "consider any issues that were raised in the reply brief that were not raised in the original motion, but [that] insofar as that may become an issue down the road, [it was] going to find that all of these folks were employees of ManorCare." In making this finding, the court did not consider the evidence Defendant had submitted with its motion and relied solely on Plaintiff's evidence and the one exhibit Defendant had been allowed to introduce at the hearing that showed Defendant's corporate structure. The court then proceeded to deny Defendant's motion for summary judgment because factual issues existed regarding the elements of Plaintiff's claims for punitive damages.

4

**{9}**     At a hearing a few days before the trial, Defendant again sought to introduce evidence showing that it did not employ the Camino Vista employees in order to make the records part of the official record for the trial so that it could document its objection to the court's finding that the Camino Vista staff was employed by Defendant.  The court, however, granted Plaintiff's motion to strike Defendant's evidence, noting that "[i]nsofar as [D]efendant wants to preserve their objections I think both by the motions for summary judgment and this hearing today your objection . . . for putting those records into the trial will be noted."  Plaintiff then asked the court for a written order memorializing the court's finding.  The court agreed that a written order was necessary, noting that the employment issue was "not going to be an issue that gets litigated at trial starting next week."  Plaintiff then submitted a proposed order.

**{10}**     Defendant filed an objection to the proposed order and argued that the order "functionally asks the [c]ourt to enter an order granting summary judgment in its favor on the issue of who was the employer of the staff at [Camino Vista] even though Plaintiff has not filed a motion for summary judgment on this issue and there are genuine factual issues on this point."  With this objection, Defendant submitted the affidavit of a former director for the region including Camino Vista, who stated that the Camino Vista facility's staff was employed by Heartland, not by Defendant.  Plaintiff then asked the court to strike the affidavit and argued that the affidavit "never addresses the relevant factors under New Mexico law that create an employer-employee relationship."  Over Defendant's objections, the court entered the order, finding that "the staff at [Camino Vista] were employees of [Defendant]."  In entering the order, the court stated that it was doing so "as a finding of the [c]ourt, not as a motion for summary judgment."

**{11}**     Defendant renewed its objection to the court's finding during the jury instruction phase of the trial and argued that "any and all instructions that imply or state or would lead a jury to conclude that the staff at Camino Vista are employed by [Defendant], isn't [sic] correct."  The court nonetheless instructed the jury that "[t]he [Camino Vista] staff were employees of [Defendant] at the time of these events.  Therefore, [Defendant] is liable for any negligent act or omission of the Camino Vista staff that caused harm to [Ms.] Barber" and that "[P]laintiff . . . has the burden of proving that . . . [t]he actions of the Camino Vista staff demonstrate willful, reckless or wanton misconduct, . . . such that punitive damages should be awarded against [Defendant]."

**{12}**     Following the jury verdict, Defendant filed a motion for a new trial based on the court's pre-trial finding that it was the employer of the Camino Vista staff.  Plaintiff responded, arguing for the first time that judicial estoppel barred Defendant from asserting that it was not the employer of the staff.  The district court denied Defendant's motion for a new trial, and Defendant appealed.

## DISCUSSION

**{13}**     Defendant argues that the district court erred when it found that Defendant was the employer of the Camino Vista staff and that because of the court's error, a new trial is necessary.  Defendant contends that the court's order was the functional equivalent of

5

summary judgment because "[t]he existence of an employment relationship usually is a question for the trier of fact" and the question of whether Defendant employed the Camino Vista staff should have been submitted to the jury because there were disputed issues of material fact on the issue.

**{14}** In response, Plaintiff argues that the district court's finding "was not a procedurally-defective summary judgment ruling but, rather, a finding that [Defendant] was judicially estopped from disavowing the employer status it had advantageously embraced and asserted throughout the proceedings." Plaintiff contends that the district court's order "memorializ[ed] its finding that [Defendant] was bound by its prior representations that the Camino Vista staff were its employees" and that "[t]he [district] court's finding constituted an appropriate application of the doctrine of judicial estoppel."

**{15}** The record does not support Plaintiff's view that the district court's finding was based on judicial estoppel. The court's order specifically stated that it was based on the evidence and argument Plaintiff presented at the hearing on Defendant's motion for summary judgment. Other than Plaintiff's counsel briefly arguing that "I believe they are estopped, both from their conduct up until this point, and from the documents I will now submit," Plaintiff made no argument to the court prior to the entry of the order that Defendant should be judicially estopped from asserting that it was not the employer of the Camino Vista staff, and the court did not make such a finding. When Defendant argued for a new trial based on the court's finding that Defendant was the employer of the Camino Vista staff, Plaintiff, for the first time, made an argument that judicial estoppel had barred Defendant from maintaining that it did not employ the staff.

**{16}** For the reasons that follow, we agree with Defendant that the court's order effectively granted summary judgment to Plaintiff on the issue of whether Defendant employed the staff of the Camino Vista facility and that the district court erred in doing so. Although we may affirm a district court's ruling if it is right for any reason, we conclude that judicial estoppel is inapplicable in this case and therefore reject Plaintiff's argument that the court's order should be affirmed as a proper application of judicial estoppel.

**The District Court Effectively Granted Plaintiff Summary Judgment on the Question of Whether Defendant Employed the Camino Vista Staff**

**{17}** Because the parties disagree about the applicable standard of review, we first consider the nature of the district court's order. The court unequivocally ruled that Defendant was the employer of the staff at the Camino Vista facility. Defendant argues that this finding is the functional equivalent of summary judgment, which we review de novo, while Plaintiff argues that the court's finding was a proper application of the judicial estoppel doctrine, which we review only for an abuse of discretion.

**{18}** The record establishes that Defendant raised the employment issue in the first pleading it filed. Plaintiff's complaint against Defendant alleged that Defendant had negligently caused the death of Ms. Barber both as a result of Defendant's direct corporate negligence and as a result of the negligent actions of the staff who cared for Ms. Barber. In

6

its answer to Plaintiff's complaint, Defendant asserted that it did not own, operate, or manage the Camino Vista facility and Defendant denied Plaintiff's assertion that "[a]t all times material herein, [Defendant] was acting through its employees . . . in the services they provided to [Ms.] Barber while she was a patient at [Camino Vista] nursing home." Thus, from the very outset of the litigation, Defendant disputed the employment relationship between itself and the Camino Vista staff.

**{19}** Defendant's answer put Plaintiff on notice that in order to hold Defendant liable for the acts of the Camino Vista staff, she would have to prove that Defendant actually employed the staff. *See Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 8, 142 N.M. 209, 164 P.3d 90 (noting that the plaintiff has the burden of proving that an individual is an employee in order to hold an employer vicariously liable for that alleged employee's actions); *see also* UJI 13-407 NMRA (providing instructions to be submitted to the jury when the existence of an employment relationship is disputed). "The principal test for determining whether an employer-employee relationship exists . . . turns on the right of the employer to control the work of the employee." *Reynolds v. Swigert*, 102 N.M. 504, 508, 697 P.2d 504, 508 (Ct. App. 1984). Whether the employer exercises sufficient control to be held liable for the acts of the employee is a question of fact that must be submitted to the jury unless there are no issues of material fact regarding the employment relationship between the parties.[1] *Blea v. Fields*, 2005-NMSC-029, ¶¶ 10, 15, 138 N.M. 348, 120 P.3d 430 (noting that summary judgment is only proper where there are no material issues of fact regarding the employment status of a defendant); *see Ciup v. Chevron U.S.A., Inc.*, 1996-NMSC-062, ¶ 8, 122 N.M. 537, 928 P.2d 263 (noting that whether franchisor controls franchisee's conduct for purposes of holding franchisor vicariously liable is a question of fact that must be submitted to the jury unless no material fact is in dispute regarding franchisor's ability to control franchisee).

**{20}** Because resolution of the employment status of the Camino Vista staff was a fact question, the district court could properly make a pre-trial determination that an employment relationship existed only if Plaintiff properly moved for summary judgment and established that there were no disputed issues of material fact. Thus, despite the court's indication that it was not entering summary judgment, the court's order was the equivalent of summary

---

[1]Defendant argues that in order to hold it liable for the acts of its subsidiary, Plaintiff was required to allege facts sufficient to pierce Defendant's corporate veil. Although piercing the corporate veil is the normal method by which a parent corporation is held liable for the acts of its subsidiary, *see Scott v. AZL Res., Inc.*, 107 N.M. 118, 121, 753 P.2d 897, 900 (1988) (noting that a parent and a subsidiary are separate corporations and that the corporate veil must be pierced to hold the parent liable for the subsidiary's actions), Plaintiff here sought to bypass the corporate veil entirely by alleging that Defendant was actually the employer of the Camino Vista staff such that Defendant could be held vicariously liable for the employees' conduct. We express no opinion on the soundness of Plaintiff's theory, or whether Plaintiff could prevail at trial. However, having chosen this particular legal theory, Plaintiff must meet the burden of proving that Defendant actually employed the individuals for whose conduct Plaintiff seeks to hold Defendant liable.

judgment because it resolved a question of fact that ordinarily would be submitted to the jury. *See Boggs v. Anderson*, 72 N.M. 136, 139, 381 P.2d 419, 421 (1963) (construing a court's sua sponte dismissal of an action to be summary judgment). By ruling that the Camino Vista staff was employed by Defendant, the court took the employment relationship question away from the jury. We therefore conclude that the court's order constituted partial summary judgment in favor of Plaintiff, which we review de novo. *See Blea*, 2005-NMSC-029, ¶ 10 (noting that when reviewing the grant of summary judgment, we review the district court's order de novo and we construe all "reasonable inferences from the record in favor of the party that opposed the motion").

**The District Court Erred by Entering Summary Judgment in Favor of Plaintiff on the Existence of an Employment Relationship**

**{21}** Plaintiff did not move for summary judgment on the employment relationship issue. Instead, Plaintiff triggered the consideration of the issue in her response to Defendant's motion for summary judgment on the viability of the punitive damages claim. Plaintiff argued that Defendant could be liable for punitive damages through its vicarious responsibility for the reckless conduct of the nursing home staff. In reply, Defendant argued that it was not the employer of the staff members. Thus, because the employment issue was not the basis of Defendant's motion, the court did not need to finally resolve the issue in order to deny the motion. Instead, the court could have concluded that there were genuine issues of material fact precluding summary judgment on the punitive damages issue, including issues of fact regarding who was the actual employer of the Camino Vista staff.

**{22}** Despite the fact that final resolution of the employment issue was not necessary for the resolution of Defendant's motion for summary judgment, Plaintiff sought an order from the court finding that Defendant was the employer of the Camino Vista staff because Plaintiff did not want to have to keep dealing with the issue at trial. The exhibits Plaintiff submitted in support of her argument consisted primarily of documents reflecting that both the Camino Vista facility and Defendant used the name "HCR ManorCare." While the court allowed Defendant a brief opportunity to respond and accepted one exhibit from Defendant showing the corporate structure of Defendant and its subsidiaries, the court refused to consider other exhibits Defendant had submitted with its reply. Those exhibits tended to show that the Camino Vista staff was employed by a subsidiary of Defendant, not by Defendant itself.

**{23}** The means employed by the district court was contrary to the proper procedure for resolving an issue of fact before trial, which is via summary judgment. Rule 1-056(D)(2) NMRA provides that a party moving for summary judgment "shall submit to the court a written memorandum containing a short, concise statement of the reasons in support of the motion with a list of authorities relied upon." The rule also requires the court to provide the party opposing the motion the opportunity to submit a written memorandum within fifteen days from service of the motion for summary judgment. *Id.* These requirements serve to "protect the rights of the party opposing the motion" by giving the party notice of the motion against it and an opportunity to respond. *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 88, 133 N.M. 669, 68 P.3d 909 (internal quotation marks and citation omitted).

**{24}** Here, Plaintiff did not file a written motion in support of its request for a ruling that Defendant was the employer of the Camino Vista staff. Instead, Plaintiff orally moved the court for such a ruling at a hearing on another motion, and the court immediately ruled in favor of Plaintiff and then later entered a written order over Defendant's objections. While Defendant was given a brief opportunity to respond orally at the hearing, the court did not allow Defendant to file a written response, and the court did not consider evidence that Defendant sought to introduce after Plaintiff broached the employment relationship issue in its response to Defendant's motion for summary judgment on the punitive damages issue. Thus, the court denied Defendant both notice that summary judgment could be entered against it and a meaningful opportunity to respond to Plaintiff's request for a ruling on the employment issue.

**{25}** Not only was the procedure followed by Plaintiff improper, but the evidence that Plaintiff submitted in support of its motion and that the court relied upon was insufficient to support a ruling as a matter of law that Defendant was the employer of the Camino Vista staff. In order to prove that Defendant was the employer, Plaintiff had to present evidence establishing that Defendant had the right to control the work of the staff members. *See Reynolds*, 102 N.M. at 508, 697 P.2d at 508 (stating that "[t]he principal test for determining whether an employer-employee relationship exists . . . turns on the right of the employer to control the work of the employee"); *see also* UJI 13-403 NMRA (explaining that "[a]n employer is one who has another perform certain work and who has the right to control the manner in which the details of the work are to be done"). A number of factors inform the determination of "whether an employer has the right to control an individual for [the] purpose of establishing vicarious liability." *Blea*, 2005-NMSC-029, ¶ 12. These factors include "(1) whether the employer is entitled to control the manner and means of the individual's performance[,] (2) the method of compensating the individual[,] (3) whether the employer has furnished equipment for the individual[,] and (4) whether the employer has the power to terminate the individual without cause." *Id.*

**{26}** Notably, none of the evidence that Plaintiff submitted addressed any of the factors listed above. Instead, Plaintiff's evidence dealt with the fact that both the Camino Vista facility and Defendant used the name "HCR ManorCare" and Defendant's acknowledgment that the Camino Vista facility was one of its subsidiaries. This evidence did not constitute a prima facie showing that Defendant had the ability to control the Camino Vista staff, and Plaintiff therefore failed to meet its burden to obtain summary judgment on the employment relationship issue. *See Ciup*, 1996-NMSC-062, ¶ 7 (explaining that in order to obtain summary judgment, the moving party must make a prima facie showing that it is entitled to a judgment as a matter of law); *cf. Savinsky v. Bromley Group, Ltd.*, 106 N.M. 175, 176, 740 P.2d 1159, 1161 (Ct. App. 1987) (noting that the defendant met its burden on summary judgment by showing that it did not have the ability to control the work of alleged employee).

**{27}** Furthermore, the evidence that Plaintiff submitted was contradicted by evidence Defendant submitted indicating that the Camino Vista facility was owned and operated by a subsidiary and that the staff was therefore employed by the subsidiary, not by Defendant.

9

In light of this evidence, the court could not properly conclude as a matter of law that Defendant employed the Camino Vista staff.

**{28}**   It is apparent that the district court believed it was making a finding of fact that Defendant employed the Camino Vista staff because the court expressly stated as much. We are unable to discern how the district court could justify making such a pre-trial finding on the basis of conflicting evidence. The only explanation Plaintiff offers is its contention that the district court found that Defendant was judicially estopped from asserting that it was not the staff's employer. However, as we discuss later in this opinion, it does not appear that the district court relied on judicial estoppel, but even if it had, the doctrine is not applicable in this case.

**{29}**   Given the improper procedure that gave rise to the district court's effective grant of partial summary judgment in favor of Plaintiff and Plaintiff's failure to make a prima facie showing that she was entitled to judgment as a matter of law on the employment issue, we conclude that the court erred in ruling that Defendant employed the Camino Vista staff.

**The District Court's Error Requires Reversal and a New Trial**

**{30}**   Defendant argues that the court's error compels reversal of the judgment against it and a new trial because of the prejudice caused by the court's ruling and the instruction to the jury that Defendant was liable for any negligent acts of the Camino Vista employees. Specifically, Defendant argues that the court took away from the jury an essential element that was Plaintiff's burden to prove—the question of whether Defendant could be held liable for the alleged negligence of the Camino Vista staff—and that the "result was an extraordinary damages award against a parent holding company for conduct of persons who were . . . employees of an independent, lawfully formed corporate subsidiary." In response, Plaintiff asserts only that Defendant's "contentions of prejudice" are "red herrings" and that the case was not "simply one of nursing negligence but, rather, of direct corporate negligence in putting profits first and people last, which led to the conduct causing [Ms. Barber's] death." While Plaintiff does not expand on this assertion, we interpret Plaintiff's argument to be that if the district court erred by finding that Defendant was the employer of the Camino Vista staff, that error is harmless because Plaintiff also asserted a cause of action against Defendant for its own negligence.

**{31}**   It is true that Plaintiff alleged that Defendant was directly negligent by failing to implement corporate policies and procedures that would have prevented Ms. Barber's death. However, Plaintiff also alleged that Defendant was vicariously liable for the negligent conduct of the nursing staff at the Camino Vista facilities, and Plaintiff submitted both the direct corporate negligence claims and the vicarious liability claims to the jury.

**{32}**   Indeed, the jury instructions focused on theories of Defendant's vicarious liability for the actions of Camino Vista staff members. Those theories allowed the jury to find Defendant negligent if "[D]efendant neglected [Ms.] Barber"; "did not properly monitor, assess, and treat [Ms.] Barber's change in condition"; "did not timely transfer [Ms.] Barber to the hospital"; "did not properly hire, train, supervise, or monitor the staff working at

10

[Camino Vista]"; or "failed to properly follow the [c]are [p]lan it had prepared for [Ms.] Barber." These theories depended on the conduct of the Camino Vista staff. In addition, the district court instructed the jury that "[t]he [Camino Vista] staff were employees of [Defendant] at the time of these events. Therefore, [Defendant] is liable for any negligent act or omission of the Camino Vista staff that caused harm to [Ms.] Barber."

{33}    The instructions related to Plaintiff's claim for punitive damages also focused on the conduct of Camino Vista employees. The district court instructed the jury that "if you find that the conduct of Camino Vista staff persons . . . was willful, reckless, or wanton, you may award punitive damages against [Defendant]" under theories of either managerial capacity or corporate ratification. These theories for obtaining punitive damages expressly relied on the existence of an employment relationship because a corporation cannot be held liable for the managerial acts of individuals who are not its employees or for ratifying the conduct of individuals who are not employed by the corporation. *See Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 21, 140 N.M. 478, 143 P.3d 717 (noting that "[a] corporation may be held liable for punitive damages *for the misconduct of its employees*" if "corporate *employees* possessing managerial capacity engage in conduct warranting punitive damages" or if "the corporation authorizes, ratifies, or participates in conduct that warrants punitive damages" (emphasis added)).

{34}    In addition, the special verdict form did not tell the jury to indicate which theory—direct negligence or vicarious liability—it relied on. The form only required the jury to answer the question: "Was [Defendant] negligent?" Thus, while the jury could have found Defendant liable based solely on its direct negligence, it is equally likely that the jury found Defendant liable solely under a theory of vicarious liability for the negligence of the nursing staff at Camino Vista. Because we have no way of determining whether the jury relied on the theory that was affected by the court's error, we reverse the judgment against Defendant and remand to the district court for a new trial. *See Smith v. Vill. of Ruidoso*, 1999-NMCA-151, ¶ 37, 128 N.M. 470, 994 P.2d 50 (reversing the jury's award of damages because it was impossible to determine whether the jury based its verdict on erroneous contract instructions or on some other theory of damages).

**Judicial Estoppel**

{35}    As noted above, the only argument Plaintiff makes in support of the court's ruling on the employment issue is that the court properly relied on judicial estoppel. We briefly address this argument because, under our "right-for-any-reason" doctrine, we could affirm the district court on the basis of judicial estoppel, assuming the doctrine were applicable, as long as "reliance on the new ground would [not] be unfair to appellant." *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (internal quotation marks and citation omitted).

{36}    "Judicial estoppel is a doctrine that prevents a party who has successfully assumed a certain position in judicial proceedings from then assuming an inconsistent position, especially if doing so prejudices a party who had acquiesced in the former position." *Rodriguez v. La Mesilla Constr. Co.*, 1997-NMCA-062, ¶ 20, 123 N.M. 489, 943 P.2d 136.

The purpose of the rule is to "estop[] a party from playing fast and loose with the court during the course of litigation." *Citizens Bank v. C & H Constr. & Paving Co.*, 89 N.M. 360, 366, 552 P.2d 796, 802 (Ct. App. 1976) (internal quotation marks and citation omitted).

**{37}** There are essentially three elements that must be met for judicial estoppel to be applicable. First, the party against whom the doctrine is to be used must have successfully assumed a position during the course of litigation. *Rodriguez*, 1997-NMCA-062, ¶ 20. Second, that first position must be "necessarily inconsistent" with the position the party takes later in the proceedings. *See Johnson v. Aztec Well Servicing Co*., 117 N.M. 697, 701, 875 P.2d 1128, 1132 (Ct. App. 1994). Finally, while not an absolute requirement, judicial estoppel will be "especially" applicable when the party's change of position "prejudices a party who had acquiesced in the former position." *Rodriguez*, 1997-NMCA-062, ¶ 20.

**{38}** Plaintiff directs us to a number of instances in the record where Defendant "asserted itself as the Camino Vista staff's employer." Specifically, Plaintiff points out that during discovery, Defendant objected to the "discovery of CaminoVista staff pre-employment screening by stating [that] the requests did not 'seek information limited to those ManorCare employees who actually cared for [Ms.] Barber.'" Plaintiff also notes that Defendant filed a number of motions in limine that referred to "ManorCare employees at Camino Vista" and that Defendant's counsel referred to the staff as "ManorCare employees" at a number of pre-trial hearings. Finally, Plaintiff notes that Defendant "successfully opposed producing documents regarding the . . . sale of its New Mexico facilities" by filing a motion in which it stated that it "is not claiming an inability or unwillingness to accept any responsibility for any judgment in this case and has produced the insurance policy that would be available to pay any judgment." Plaintiff argues that the language Defendant used in its motions "unambiguously explained its status, confirming that i[t] was, indeed, the responsible party for Camino Vista staff."

**{39}** While these examples establish that Defendant colloquially referred to the Camino Vista staff as "ManorCare employees" on more than one occasion, Plaintiff has failed to show that these references rise to the level required to invoke judicial estoppel. The primary purpose of the judicial estoppel rule is to prevent parties from "playing fast and loose with the court" by *successfully* arguing one position and then later adopting a position inconsistent with the first. *Citizens Bank*, 89 N.M. at 366, 552 P.2d at 802 (internal quotation marks and citation omitted). In *Guzman v. Laguna Development Corp.*, 2009-NMCA-116, ¶¶ 13-14, ___ N.M. ___, ___ P.3d ___ (No. 27,827, June 25, 2009), for example, we held that a defendant was judicially estopped from arguing to the district court that workers' compensation was the exclusive remedy for the plaintiff's injury because, at an earlier proceeding before the Workers' Compensation Administration, the defendant had successfully argued that the employee was not acting in the course and scope of employment and that workers' compensation was therefore inapplicable. Unlike the situation in *Guzman*, Plaintiff here has not directed this Court to any instance in the voluminous record where Defendant successfully argued that it in fact was the employer of the staff at the Camino Vista facility. Instead, Plaintiff directs us only to instances where Defendant colloquially referred to the staff as "ManorCare employees."

12

**{40}**     Plaintiff argues that the fact that Defendant prevailed on some of the motions where it used the phrase "ManorCare employees" is sufficient to give rise to judicial estoppel. Plaintiff, however, has not indicated how the use of the phrase in any way affected the resolution of those motions, and thus has failed to show that Defendant successfully argued the position that it was the employer of the staff as required for judicial estoppel to apply. Because the employment status of the Camino Vista staff was not at issue in any of the motions or hearings upon which Plaintiff relies, Defendant cannot be said to have been "playing fast and loose" with the court, and judicial estoppel is therefore inapplicable in this case. *See Sw. Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 2006-NMCA-151, ¶¶ 18-19, 140 N.M. 720, 148 P.3d 806 (noting that where an employer had specifically argued that a decedent was not its employee in a previous proceeding, the employer was not barred by judicial estoppel from later asserting that the decedent was its employee because the previous case had settled before the issue was resolved and the employer therefore did not successfully argue an inconsistent position).

**{41}**     Furthermore, from the very outset of the litigation, in its answer to Plaintiff's complaint, Defendant denied that it "owned, operated, and managed" the nursing home and asserted that Four Seasons, doing business as ManorCare Camino Vista, was responsible for the staffing and operation of the Camino Vista facility. Thus, Defendant's initial position with respect to the employment status of the Camino Vista staff was consistent with its position throughout:  that Defendant was not the employer.  Defendant's later casual reference to the Camino Vista staff as "ManorCare employees" cannot be deemed an abandonment of its defense that it did not own and operate the Camino Vista facility.

**{42}**     Plaintiff also argues that Defendant's statement that it was willing and able to pay any judgment stemming from this case precludes Defendant from arguing that it is not the employer of the Camino Vista staff.  Contrary to Plaintiff's argument, Defendant's statement did not constitute an unambiguous confirmation that it was the employer of the Camino Vista staff.  In fact, Defendant's statement did not depend on an employment relationship, nor did it assert that it was the employer of the Camino Vista staff.  Defendant's statement simply indicated that if a judgment were entered against it, it had the financial resources to pay the judgment.  A prerequisite of such a judgment would be Plaintiff's proving all elements of her case against Defendant, including proving that Defendant was the employer of the nursing staff such that it could be held accountable for the staff's actions.

**{43}**     In addition, neither party appears to dispute that the Camino Vista facility operated under the name "ManorCare Camino Vista."  Thus, a reasonable shorthand reference to the employees of the Camino Vista facility would be the "ManorCare employees." *Cf. Johnson*, 117 N.M. at 701, 875 P.2d at 1132 (noting that a worker was not judicially estopped from asserting that the defendant was his employer where he had represented on a form that another company was his employer because the previous assertion did not indicate that the other company was the *only* employer).  Thus, Plaintiff has failed to show that Defendant asserted a position with respect to the employment status of the Camino Vista staff that was inconsistent with Defendant's argument that it did not employ the staff.

**{44}** Finally, while a showing of prejudice is not an essential element of judicial estoppel, it is one factor that we consider. Plaintiff has failed to show that she was prejudiced in any way by Defendant's reference to the Camino Vista staff as "ManorCare employees." *See Rodriguez*, 1997-NMCA-062, ¶ 22 (noting that judicial estoppel was inapplicable because the defendant failed to "demonstrate[] that it was prejudiced by [the plaintiff's] conduct" and because the plaintiff's position "did not affect [the defendant] in any way"). Indeed, in the district court, Plaintiff's counsel argued that the court should rule that Defendant employed the Camino Vista staff not because Plaintiff had in some way relied on Defendant's use of the shorthand term, but instead because Plaintiff's counsel "[did not] want to have to be dealing with [the employment issue] over and over again unnecessarily at trial."

**{45}** From the outset of the litigation, Plaintiff was on notice that Defendant disputed the allegation that it employed the staff at the Camino Vista facility. It was Plaintiff's burden to prove the existence of an employment relationship in order to hold Defendant liable for the acts of the Camino Vista staff. Defendant's shorthand reference to the staff as "ManorCare employees" can hardly be said to have relieved Plaintiff of its burden of proving that Defendant exercised the level of control required to hold Defendant vicariously liable or to have constituted an abandonment of Defendant's assertions that it did not own and operate the Camino Vista facility.

**{46}** Because Plaintiff has failed to show that Defendant actually asserted any inconsistent positions to the court, and because Plaintiff has failed to show how she was prejudiced by any of the alleged inconsistencies, we conclude that judicial estoppel is inapplicable in this case.

**CONCLUSION**

**{47}** For the foregoing reasons, we reverse the judgment against Defendant and remand to the district court for a new trial.

**{48} IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**ROBERT E. ROBLES, Judge**

**Topic Index for *Keith v. ManorCare, Inc.*, No. 28,008**

**AE          APPEAL AND ERROR**

14

AE-RM            Remand

**CP**            **CIVIL PROCEDURE**
CP-ES            Estoppel
CP-NT            New Trial
CP-SJ            Summary Judgment

**CS**            **CORPORATIONS**
CS-SB            Subsidiary

**EL**            **EMPLOYMENT LAW**
EL-EE            Employer-Employee Relationship
EL-IC            Independent Contractor

**RE**            **REMEDIES**
RE-PU            Punitive Damages

**TR**            **TORTS**
TR-VL            Vicarious Liability
TR-WD            Wrongful Death